IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MAY 1 5 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

NATIONWIDE GENERAL          )
    INSURANCE CO.,          )
                )
    Plaintiff,          )
                )
    v.          )          1:11cv1025 (LMB/TRJ)
                )
STACY E. HERESI, et al.,          )
                )
    Defendants.          )
                )

## MEMORANDUM OPINION

Plaintiff Nationwide General Insurance Company ("Nationwide") brings this declaratory judgment action to clarify the extent of its obligation to pay defendants, the administrators of the estates of two decedents ("the defendant estates" or "the estates"), underinsured motorist benefits under the decedents' Nationwide automobile policy.[1]  The parties have brought cross motions for summary judgment.  They agree that no material facts are in dispute and that the only issues to be decided involve interpretation of the insurance policy.  For the reasons stated below, defendants' motions for summary judgment will be granted and plaintiff's motion will be denied.

---

[1] Defendants Stacy E. Heresi and Deanna M. Parrott are the administrators of the estate of Dale Ray Parrott; Stuart Gray Ellis, Jr. is the administrator of the estate of Shirley Ann Parrott.

## I.   BACKGROUND

This insurance dispute arises from a fatal automobile accident that occurred on July 31, 2010 in Orange County, Virginia.   Dale Ray Parrott and Shirley Ann Parrott, a married couple traveling in a car driven by Mr. Parrott, were both killed in the accident.   The other car was driven by Mildred Sue Ferguson.   Ferguson's automobile liability policy with State Farm Mutual Automobile Insurance Company ("State Farm") caps recovery for the Parrott estates at $100,000 each.   State Farm has offered to pay each estate the full $100,000 in exchange for discharge of all claims against Ferguson.   Compl. ¶ 11.

Dale Parrott held a personal automobile policy with Nationwide ("the Nationwide Policy").[2]   Under Part D of the policy, Nationwide agreed to "pay, in accordance with Va. Code Ann. Section 38.2-2206, damages which an insured or an insured's legal representative is legally entitled to recover from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle because of...[b]odily injury sustained by an insured and caused by an accident."   Nationwide

---

[2] Shirley Parrott is covered under her husband's policy first because the terms "you" and "your" in the policy refer to both the named insured and his spouse.   Nationwide Policy at D1.   The uninsured motorist section at issue in this action also defines the term "insured" as "you or any family member" and "any other person occupying or using your covered auto."   Id. Part D, at U1.

2

Policy Part D, at U1.   The Nationwide Policy provides
uninsured/underinsured ("UM"/"UIM") motorist coverage for bodily
injury up to a maximum of $300,000 per person, with a limit of
$300,000 per accident.[3]   See Nationwide Policy Declarations;
Nationwide Policy Part D, at U2.   The policy specifies that
these maximums apply regardless of the number of insureds,
claims made, or vehicles or premiums reflected in the
declarations.   Id. at U2-U3.   It goes on to state that "[a]ny
damages payable under this coverage...[s]hall be reduced by all
sums paid because of bodily injury or property damage by or on
behalf of persons or organizations who may be legally
responsible."   Id. at U3.

Nationwide has brought this declaratory judgment action
seeking "a binding adjudication as to its obligations to pay and
provide underinsured motorist benefits to the Defendants."
Compl. ¶ 20.   At oral argument, counsel represented that
wrongful death lawsuits on behalf of the defendant estates are
pending against Ferguson in the Virginia state court system.
For the purposes of this action, the parties assume that each of
the wrongful death actions would yield at least $300,000 in

---

[3] Virginia law requires UM carriers "to make payment for bodily
injury or property damage caused by the operation or use of an
underinsured motor vehicle to the extent the vehicle is
underinsured."   Va. Code Ann. § 38.2-2206(A).   "Bodily injury"
is defined to include "death resulting from bodily injury."   Id.
§ 38.2-2206(B).

damages, but they dispute the amount of UIM benefits to which
the defendant estates would be entitled under the Nationwide
Policy. Specifically, Nationwide maintains that it is only
obligated to pay a total of $200,000, whereas defendants argue
that Nationwide is obligated to pay a total of $300,000. Under
the latter payout scheme, $200,000 would be paid to the first
estate to obtain a judgment against Ferguson and $100,000 would
be paid to the second estate to do so.[4]

## II. DISCUSSION

### A. Standard of Review

"The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a). A genuine dispute of material fact exists "if
the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986). The Court must view the record
in the light most favorable to the nonmoving party. See Bryant
v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). The
moving party must initially show the absence of a genuine

---

[4] Nationwide argues that it is not required to pay the Parrott
estates on a pro rata basis; however, the estates are not
seeking a pro rata distribution, as they have agreed to divide
equally whatever insurance proceeds are paid. See Ellis Opp'n
at 9. The Court therefore will not address Nationwide's pro
rata distribution argument.

dispute of material fact, and once it has met its burden, the nonmovant "must come forward and show that a genuine dispute exists." Arrington v. ER Williams, Inc., 2011 U.S. Dist. LEXIS 144909, at *11-12 (E.D. Va. Dec. 16, 2011) (Cacheris, J.) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) and Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

B. The Interpretive Dispute

In Nationwide's view, it is only obligated to pay a total of $200,000 to the two Parrott estates; that is, the first estate to obtain a judgment against Ferguson would be entitled to UIM coverage of $300,000, which would be reduced to $200,000 due to the $100,000 payment under Ferguson's State Farm policy. Because of the $300,000 per accident cap, after paying the "first estate" $200,000, only $100,000 would remain available to be paid to the second decedent's estate.  That amount would then be reduced by the second $100,000 State Farm payment, leaving the second estate entitled to $0 from Nationwide.  As a result, Nationwide argues that it is only liable to pay a total of $200,000, which is less than the $300,000 per accident cap.

In contrast, the defendant estates seek a combined total of $300,000 from Nationwide, the maximum per accident allowance. The estates argue that each decedent should be considered separately pursuant to the policy's per person coverage limit.

5

That is, both Dale and Shirley Parrott were covered for a maximum of $300,000 of UIM coverage under the Nationwide Policy. That coverage would be reduced by the $100,000 State Farm payments, resulting in $200,000 as the "extent to which Ferguson's vehicle is underinsured" as to each of Dale and Shirley Parrott.  Because the Nationwide Policy caps coverage at $300,000 per accident, the combined $400,000 to which the estates argue that they would be entitled must be reduced to the $300,000 per accident allowance.

C. The Nationwide Policy

The Nationwide Policy's UM/UIM provision provides:

A. The limit of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorists Coverage [$300,000] is our maximum limit of liability for all damages…arising out of bodily injury sustained by any one person in any one accident.   Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Declarations for each accident for Uninsured Motorists Coverage [$300,000] is our maximum limit of liability for all damages for bodily injury resulting from any one accident…

This is the most we will pay regardless of the number of:

1. Insureds;
2. Claims made; or
3. Vehicles or premiums shown in the Declarations.

B. Any damages payable under this coverage…[s]hall be reduced by all sums paid because of bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible…

6

Nationwide Policy Part D, at U3.

The Nationwide Policy's UIM provision is silent as to whom the "damages" must be payable (i.e., a group of persons in one accident or a single insured) before reduction is taken for a payment by the tortfeasor.  As a structural matter, the provision initially details its per person coverage and then, "subject to this limit for each person," further limits recovery to $300,000 per accident.  Moreover, rather than stating that "coverage shall be reduced by all sums paid" by the legally responsible party, the policy provides that "[a]ny damages payable under this coverage" shall be so reduced.  The use of the term "damages" rather than "coverage" suggests that the amount of coverage provided to an individual under the policy remains in place, but the amount of damages—i.e., the amount actually payable—is reduced by the negligent party's insurance payout.  Under this reading, the provision requires an analysis of damages payable to a particular claimant, not to all potential claimants in a single accident.

D. Virginia Law Regarding Underinsured Motorist Coverage

Under the Virginia Code, all property damage and bodily injury automobile insurance policies must contain UM coverage "to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle."  See Va. Code Ann. § 38.2-2206(A).  UM

7

provisions "also obligate the insurer to make payment for bodily
injury or property damage caused by the operation or use of an
underinsured motor vehicle to the extent the vehicle is
underinsured." See id.  For purposes of this provision, a motor
vehicle is considered underinsured "when, and to the extent
that, the total amount of bodily injury and property damage
coverage applicable to the operation or use of the motor vehicle
and available for payment[5] for such bodily injury or property
damage...is less than the total amount of uninsured motorist
coverage afforded any person injured as a result of the
operation or use of the vehicle." Id. § 38.2-2206(B).  In other
words, a vehicle is underinsured when the injuring party holds
less bodily injury coverage than the amount of uninsured
motorist coverage held by the injured party.

Accordingly, the statute requires UM carriers to make
payment for injuries caused by an underinsured vehicle "to the
extent the vehicle is underinsured," defining such
underinsurance by reference to the extent of UM coverage
provided by the injured party's carrier.  The estates argue that
the statute requires an initial calculation of the entitlement

---

[5] "Available for payment" is defined as "the amount of liability
insurance coverage applicable to the claim of the injured person
for bodily injury or property damage reduced by the payment of
any other claims arising out of the same occurrence." Va. Code
Ann. § 38.2-2206(B).

of each decedent to UIM payments and then limits the aggregate by the per accident cap.

By its plain terms, the statute measures underinsurance by looking to each individual insured's UM coverage, not to the amount available for payment from the UM carrier. As the estates correctly observe, the first clause of the "underinsured" definition, which describes payment by the tortfeasor, refers to the "total amount of…coverage applicable to the operation or use of the motor vehicle and available for payment" (emphasis added). In contrast, the second clause omits the "available for payment" qualifier and instead describes the injured party's coverage as the "total amount of uninsured motorist coverage afforded any person injured" (emphasis added).

By using the phrase "afforded any person injured" rather than the phrase "available for payment," the definition does not contemplate a per accident discount to the injured party's coverage in determining the extent of the tortfeasor's underinsurance. Moreover, the term "person" is used in the singular, and the definition includes no language measuring the injured party's UIM coverage in accordance with a per accident cap. The plain meaning of "coverage afforded any person" therefore refers to the initial amount of coverage provided to an individual under the policy, not to a group of persons pursuant to a per accident maximum.

9

The parties agree that there is no Virginia case law interpreting the UIM provision that directly governs the facts of this case. As a general matter, however, the Virginia Supreme Court has been clear that "[i]n resolving issues of UM coverage" courts should "apply the well-established principles that the legislation mandating UM coverage is remedial in nature, is to be liberally construed, and that, in the case of conflict between the provisions of the insurance policy and the statutory requirements, the statute controls." Nationwide Mut. Ins. Co. v. Hill, 247 Va. 78, 84 (1994); see also USAA Cas. Ins. Co. v. Alexander, 248 Va. 185, 194 (1994) (explaining that the UM statute "was enacted for the benefit of injured persons, is remedial in nature, and is liberally construed so that the purpose intended may be accomplished") (quoting Grossman v. Glens Falls Ins. Co., 211 Va. 195, 197 (1970)).

Nationwide generally characterizes Virginia as a "narrow coverage" state, which "is indicated if the statute includes a set-off of underinsured motorist coverage by the amount of any liability insurance payment received by the insured." Nationwide Mot. ¶ 26.  In contrast, Nationwide describes "broad coverage" states as "seek[ing] to provide full indemnification for all actual damages sustained by an insured." Id. ¶ 27. Nationwide supports its "narrow coverage" position by referring to the California UIM statute, which provides in part:

10

> [T]he maximum liability of the insurer providing the
> underinsured motorist coverage shall not exceed the
> insured's underinsured motorist coverage limits, less the
> amount paid to the insured by or for any person or
> organization that may be held legally liable for the
> injury….
>
> The insurer paying [an underinsurance] claim…shall, to the
> extent of the payment, be entitled to reimbursement or
> credit in the amount received by the insured from the owner
> or operator of the underinsured motor vehicle or the
> insurer of the owner or operator.

Viking Ins. Co. v. State Farm Mut. Auto. Ins. Co., 21 Cal. Rptr.

2d 590, 593-94 (Cal. Ct. App. 1993) (quoting statute)

(alterations in original).  The defendant in Viking made an

argument very similar to the estates' here: that the statute's

use of the word "insured" in the singular means that the off-set

for the tortfeasor's insurance payments should be applied to

each insured on an individual basis, rather than applied per

accident.  In rejecting this argument, the California Court of

Appeal observed that a contrary holding would eviscerate any

off-set to the per accident limit, and held that "a carrier

providing underinsured motorist benefits never pays the full

amount, only the difference between the policy limits and all

contributions by all tortfeasors to all insureds."  Id. at 595

(emphasis in original) (internal quotation marks omitted).

Simply put, in the California court's view, "[i]f there is only

one injured insured, the per person limits and offset apply.  If

there is more than one injured insured, the per accident limits
and offset apply." Id. at 597.

The estates argue that Virginia would adopt the approach of
those "narrow coverage" states that do not follow the California
rule.  For example, the New Jersey UIM statute provides in part:

> A motor vehicle is underinsured when the sum of the
> limits of liability under all bodily injury and
> property damage liability bonds and insurance policies
> available to a person against whom recovery is sought
> for bodily injury or property damage is, at the time
> of the accident, less than the applicable limits for
> underinsured motorist coverage afforded under the
> motor vehicle insurance policy held by the person
> seeking that recovery…The limits of underinsured
> motorist coverage available to an injured person shall
> be reduced by the amount he has recovered under all
> bodily injury liability insurance or bonds.

Gambino v. State Farm Ins. Co., 348 N.J. Super. 204, 208-09

(N.J. Sup. Ct. App. Div. 2002) (quoting statute).  In Gambino,
the court held that where "there are multiple claimants who have
exhausted the tortfeasor's liability insurance, and UIM coverage
is available through a split limit policy, the appropriate
credit is determined by applying each injured party's recovery
of liability insurance against that party's per person UIM
coverage, subject only to the total per accident UIM cap set
forth in the policy." Id. at 206.  The court further explained
that the opposite view, which would subtract recovery from the
per accident limit,

> would not provide insureds with the coverage they
> purchased. Under [this] theory, the UIM per accident

12

> limit would never be recoverable by the insureds,
> since reducing the per accident UIM limit by the
> aggregate recoveries of the insureds will always
> reduce the per accident coverage to below that amount
> which was purchased. The insurer will never be
> required to pay the total coverage per accident
> purchased by the insured because that sum would be
> reduced by the amount paid by the tortfeasor.

Id. at 211.

Although no Virginia case has dealt directly with facts analogous to those in this case, the estates point to Nationwide Mut. Ins. Co. v. Scott, 234 Va. 573 (1988), in further support of their position.  In Scott, the plaintiff had been injured by two underinsured drivers in separate vehicles.  The plaintiff's UIM carrier argued that it was only obligated to pay the difference between its UIM coverage limits and the aggregate payout from the two negligent drivers' policies.  In interpreting the Virginia UIM statute, the Virginia Supreme Court held that the statute's "legislative purpose was to increase the total protection afforded by insurance to claimants injured or damaged by negligent motorists," id. at 577, concluding that the plaintiff was entitled to UIM payments from her carrier as to each of the two cars involved in the accident, because each was separately underinsured as to her.

Under Nationwide's reading of Scott, injured parties could not recover a total of more than the per accident UIM limit from

all sources combined.[6]  In <u>Scott</u>, however, the Virginia Supreme

Court recognized that the UIM statute contemplates a full payout

---

[6] Nationwide adamantly argues that <u>Scott</u> is irrelevant to the
issue currently before the Court, because the accident here
involves two claimants and a single underinsured driver, rather
than multiple underinsured drivers and a single claimant as in
<u>Scott</u>.  In particular, Nationwide maintains that, in narrow
coverage states, UIM coverage is meant to put claimants in the
same position they would have been in if injured by an uninsured
motorist, not in a better position by permitting recovery of the
tortfeasor's liability insurance as well as the full limit of
the claimant's UIM per accident coverage.

In support of this contention, Nationwide relies upon <u>Trisvan v.
Agway Ins. Co.</u>, 254 Va. 416 (1997), and <u>Superior Ins. Co. v.
Hunter</u>, 258 Va. 338 (1999).  In <u>Trisvan</u>, the injured passenger
in a single-car accident argued that the tortfeasor's UIM
coverage was "afforded" to him under the statute and,
accordingly, the extent to which the tortfeasor was underinsured
was measured by aggregating the injured party's UIM coverage
with the tortfeasor's UIM coverage.  The court rejected this
argument, holding that the statute is meant to allow an injured
person to "access the 'over-insurance' in his UM/UIM
endorsement," not "to expand protection to injured parties
generally."  See <u>Trisvan</u>, 254 Va. at 419.  <u>Trisvan</u> is clearly
distinguishable from the instant case, because here, the estates
do not attempt to augment their own UIM coverage with that of
the tortfeasor; they merely seek to recover the full payout for
which they contracted in their own policy.

In <u>Hunter</u>, the plaintiffs were father and daughter Percell and
Lekedra Hunter.  They were passengers in a car driven by their
wife/mother, Eva Hunter, who caused a two-car accident.  All
three Hunters were named insureds under the same automobile
insurance policy, which provided both liability and UM/UIM
coverage.  Because the plaintiffs' damages exceeded the amount
of liability coverage available after payment to the injured
persons in the other car, they sought to access the UIM coverage
in the policy they shared with Eva Hunter, the tortfeasor.  The
court held the UIM statute "was intended to protect injured
parties in situations where the amount of coverage available to
them was beyond their control, 'not to...expand protection to
injured parties generally,'" concluding that the plaintiffs were
not entitled to UIM coverage as well as liability coverage under

14

from the UIM carrier in addition to any liability insurance payment from the injuring party, thereby distinguishing Virginia from the approach taken in California. In light of the remedial nature of the UM statute and the "legislative purpose...to increase the total protection afforded by insurance to claimants injured or damaged by negligent motorists," Scott, 234 Va. at 577, the Court finds that the statutory definition of "underinsured" requires any payment to a single insured from a tortfeasor to be deducted from the amount of that insured's individual UIM coverage, not from the policy's per accident cap.

To the extent that the Nationwide Policy is at all ambiguous, the Court construes it liberally in favor of the insureds and consistent with the statute. See SNL Fin., LC v. Phila. Indem. Ins. Co., 455 F. App'x 363, 367 (4th Cir. 2011) ("Contracts of insurance are to be liberally construed in favor of the insured...."); Dyer v. Dairyland Ins. Co., 267 Va. 726, 731 (2004) ("The provisions of the statute [§ 38.2-2206] are part of the contract of insurance, and we will not consider language in a policy that, arguably, is inconsistent with the statute as we have construed it.") (quoting Scott, 234 Va. at 577)

---

their own policy. Hunter, 258 Va. at 345-46 (quoting Trisvan, 254 Va. at 419). As with Trisvan, Hunter is inapplicable to the case at hand. The decedents are not named insureds under the tortfeasor's policy in this case, nor do they seek payment from both the liability and UIM portions of their own policy. Rather, they only seek payment under the UIM coverage of their insurance policy.

(alterations omitted). Accordingly, the defendant estates are entitled to a maximum combined total of $300,000 from Nationwide, representing the entirety of the per accident cap.

### III. CONCLUSION

For the foregoing reasons, the defendant estates' motions for summary judgment will be granted and plaintiff's motion for summary judgment will be denied by an Order to accompany this Memorandum Opinion.

Entered this _15th_ day of May, 2012.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge